EDWARD M. BURCH, Pro Hac Vice
LAW OFFICE OF MICHAEL & BURCH, LLP
One Sansome Street, Suite 3500
San Francisco, CA 94104
Telephone: (415) 946-8996
Email: edward@michaelburchlaw.com

Attorney for Claimant The Michael J. Miske, Jr. Revocable Living Trust

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>REAL PROPERTY LOCATED AT 6 LUMAHAI STREET IN PORTLOCK, HAWAII, TOGETHER WITH ALL APPURTENANCES AND IMPROVEMENTS; ET AL,<br><br>    Defendants in rem.<br><br>―――――――――――――――<br><br>THE MICHAEL J. MISKE, JR. REVOCABLE LIVING TRUST, U.S. BANK TRUST NATIONAL ASSOCIATION, HAWAII CENTRAL FEDERAL CREDIT UNION, BANK OF HAWAII,<br><br>    Claimants.<br><br>―――――――――――――――| **Civil No. 1:25-cv-00028 DKW-KJM**<br><br>**CLAIMANT THE MICHAEL J. MISKE, JR. REVOCABLE LIVING TRUST'S OBJECTION TO MAGISTRATE'S ORDER (ECF No. 64) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. Derrick K. Watson<br>Magistrate: Hon. Kenneth J. Mansfield |

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   STANDARD OF REVIEW ..........................................................................2

III.  ARGUMENT................................................................................................3

    A.   The Magistrate's Deferral of A Futility Analysis Is Contrary to Law….....3

    B.   The Amendment Is Futile Because the Government's Allegations Fail to
       State a Cognizable Legal Theory Under § 981. ........................................5

       1.   Section 981's "Obtained From" Language Does Not Reach Property
          Already Held.................................................................................5

       2.   An Assignment To A Trust Did Not Shield Miske's Assets From
          Potential Criminal Forfeiture, So Did Not Transform Pre-Existing
          Property to Obstruction Proceeds .................................................9

       3.   The Government's Cited Cases Rest on Inapplicable Statutory
          Standards and Starkly Different Facts .......................................12

       4.   Suicide Cannot Constitute Obstruction....................................18

    C.   The Remaining Foman Factors Do Not Independently Support
       Amendment...............................................................................................19

IV.  CONCLUSION.............................................................................................2

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Amonette v. Indymac Bank, F.S.B.*, 515 F. Supp. 2d 1176 (D. Haw. 2007)........9, 10

*Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995)...........................................1, 3, 4, 18

*Cahill v. Insider Inc.*, 131 F.4th 933 (9th Cir. 2025)..................................................2

*Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002 (9th Cir. 2011).................5

*Daisey Trust v. Federal Housing Finance Agency*, 163 F.4th 1208 (9th Cir. 2026) 5

*Deveraturda v. Globe Aviation Security Services*, 454 F.3d 1043 (9th Cir. 2006)...5

*Estate of Tungpalan v. Crown Equipment Corp.*, No. 11-00581 LEK-BMK, 2013
     WL 2897777 (D. Haw. June 12, 2013)..............................................................3

*Foman v. Davis*, 371 U.S. 178 (1962)...................................................1, 3, 4, 17, 18

*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209 (9th Cir. 1988)....................................4

*Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017).............................4

*Rice v. Comtek Mfg. of Oregon, Inc.*, 766 F. Supp. 1550 (D. Or. 1990)...................2

*Ringelberg v. Vanguard Integrity Professionals-Nevada, Inc.*, No. 2:17-cv-02538,
     2018 WL 3729510 (D. Nev. Aug. 6, 2018) ......................................................2

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998).............................4

*United States v. $493,850.00*, 518 F.3d 1159 (9th Cir. 2008)...........................7, 16

*United States v. 2121 Kirby Drive, Unit 33, Houston, Texas et al.*, No. 4:06-cv-
     3335 (S.D. Tex. 2006) .....................................................................................15

*United States v. Capoccia*, 503 F.3d 103 (2d Cir. 2007)..........................................6

*United States v. Clark*, 165 F. Supp. 3d 1215 (S.D. Fla. 2016) .......................13, 14

*United States v. Elias*, 154 F.4th 56 (9th Cir. 2025) ...............................................6

*United States v. Gilbert*, 244 F.3d 888 (11th Cir. 2001) .......................................10

*United States v. Hanhardt*, 361 F.3d 382 (7th Cir. 2004) ....................................17

*United States v. Miller*, 911 F.3d 229 (4th Cir. 2018)......................................11, 12

*United States v. Prasad*, 18 F.4th 313 (9th Cir. 2021) ............................................6

*United States v. Real Property and Premises*, 657 F. Supp. 2d 1060 (D. Minn.
     2009) .................................................................................................................6

*United States v. Real Property Identified as Parcel 03179-005R*, 287 F. Supp. 2d
     45 (D.D.C. 2003) ..............................................................................................6

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ...........................................7

*United States v. Torres*, 703 F.3d 194 (2d Cir. 2012) .............................................14

*United States v. Totaro*, 345 F.3d 989 (8th Cir. 2003).......................................11, 12

## **Statutes & Rules**

18 U.S.C. § 981 ...............................................................................passim

18 U.S.C. § 981(a)(1)(C)................................................................1, 5, 7, 13, 15

18 U.S.C. § 981(a)(2)(A)......................................................................1, 5, 13, 14

18 U.S.C. § 982(a)(1) ...........................................................................12

18 U.S.C. § 982(a)(2) ...........................................................................13

18 U.S.C. § 983(d)(2) ...........................................................................10

18 U.S.C. § 983(d)(3) ...........................................................................10

18 U.S.C. § 1512 ...........................................................................16, 17

18 U.S.C. § 1963(a)(1) ...........................................................................12

26 U.S.C. § 676 ...........................................................................9

28 U.S.C. § 636(b)(1) ...........................................................................2

28 U.S.C. § 636(b)(1)(A) ...........................................................................2

Civil Asset Forfeiture Reform Act (CAFRA) ...............................................7, 15, 16

Fed. R. Civ. P. 15 ...........................................................................3

Fed. R. Civ. P. 72(a)...........................................................................2

Haw. Rev. Stat. § 554D-401...........................................................................8

Haw. Rev. Stat. § 554G-2...........................................................................8

Local Rule 74.1 ...........................................................................2

## **Other Authorities**

Loring and Rounds: A Trustee's Handbook § 2.1.1 (2024) .....................................8

Restatement (Third) of Property: Wills and Other Donative Transfers § 6.1 cmt. b 8

Restatement (Third) of Trusts § 25 cmt. e...........................................................9

## I.  INTRODUCTION

Claimant The Michael J. Miske, Jr. Revocable Living Trust (the "Trust") respectfully objects to the Magistrate's April 9, 2026 Order (ECF No. 64, Text Only Entry) granting Plaintiff's Motion for Leave to File a Second Amended Civil Forfeiture Complaint (ECF No. 56). The Order is contrary to law. Rather than conduct a futility analysis, the Magistrate held that Claimant's futility arguments are "better addressed after discovery or on a dispositive motion." ECF No. 63 at 2. Futility under *Foman v. Davis*, 371 U.S. 178, 182 (1962), and *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995), exists precisely to foreclose legally defective claims before the parties incur the burden of discovery and merits litigation. By deferring that inquiry to later proceedings, the Magistrate effectively eliminated futility as a basis to deny amendment, rendering this *Foman* factor a nullity.

The Magistrate further erred in finding the allegations "sufficient to state a claim." Even accepted as true, the Government's allegations do not give rise to a cognizable legal theory under § 981. The futility question here is purely one of statutory interpretation requiring no factual development: whether 18 U.S.C. §§ 981(a)(1)(C) and 981(a)(2)(A) can reach property on a proceeds-of-obstruction by suicide theory, when the property was acquired years before and was not obtained from the alleged obstruction. That question can and should be resolved, in the negative, on the face of the statute and the (proposed) allegations: no court has ever

1

stretched § 981's obtained from/proceeds language so far past its plain language. [1]

## II.    STANDARD OF REVIEW

Claimant objects pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil

Procedure 72(a), and Local Rule 74.1. A magistrate judge's ruling on a motion for

leave to amend is a non-dispositive matter reviewed under the clearly erroneous or

contrary to law standard. *Rice v. Comtek Mfg. of Oregon, Inc.*, 766 F. Supp. 1550,

1551 (D. Or. 1990). The district court must modify or set aside any portion of the

order that is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); LR

74.1. An order is contrary to law "when it fails to apply or misapplies relevant

statutes, case law, or rules of procedure." *Ringelberg v. Vanguard Integrity*

*Professionals-Nevada, Inc.*, No. 2:17-cv-02538, 2018 WL 3729510, at *1 (D. Nev.

Aug. 6, 2018).

While factual findings are reviewed for clear error, legal conclusions are

reviewed de novo. The Ninth Circuit recently confirmed that the "contrary to law"

standard and the de novo standard both "invite plenary, non-deferential review for

questions of law." *Cahill v. Insider Inc.*, 131 F.4th 933, 937 n.4 (9th Cir. 2025).

The futility determination – whether a proposed amendment fails as a matter of law

– is a legal conclusion that receives de novo review.

---

[1] Although futility is dispositive and the focus of this objection, Claimant does not concede the remaining *Foman* factors and preserves all objections to the Magistrate's conclusions. (See ARGUMENT III, C, *infra*).

This Court has sustained objections to magistrate orders granting leave to amend on futility grounds. In *Estate of Tungpalan v. Crown Equipment Corp.*, No. 11-00581 LEK-BMK, 2013 WL 2897777 (D. Haw. June 12, 2013), the district court sustained an objection to a magistrate's order granting leave to amend, finding the proposed amendment futile as barred by the applicable statute of limitations, and vacated the order accordingly. The same result is warranted here.

## III.   ARGUMENT

The Magistrate's futility holding consists of the following two sentences, both of which independently require reversal:

> The Court agrees with Plaintiff that the allegations in the proposed second amended complaint are sufficient to state a claim for purposes of deciding whether to grant leave to amend under Rule 15. The Court also agrees with Plaintiff that Claimant's futility arguments are better addressed after discovery or on a dispositive motion.

ECF No. 64 at 2.

### A.   The Magistrate's Deferral of A Futility Analysis Is Contrary to Law.

By holding that futility is "better addressed after discovery or on a dispositive motion," the Magistrate improperly declined to conduct a futility analysis.

*Foman* and *Bonin* require a court presented with a futility objection to evaluate that objection since, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin, supra,* 59 F.3d at 845. The Supreme

3

Court listed futility as one of five specific grounds to deny amendment precisely because some proposed amendments are so clearly foreclosed as a matter of law that proceeding to discovery would waste the resources of both the parties and the Court. A court that says futility is "better addressed after discovery" has not conducted a futility analysis, it has eliminated the factor. If futility can always be deferred, it can never be a basis to deny amendment, which directly contradicts *Foman* and *Bonin*. (*See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017), affirming denial of leave to amend on futility grounds where the legal deficiency was irremediable regardless of any additional facts.) This is precisely such a case: the futility question is purely one of statutory interpretation resolvable on the face of the existing record, and the Magistrate's deferral of it to future proceedings, are contrary to law.

The governing standard is well established. An amendment is futile if it would be "subject to dismissal," *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998), or if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim," *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Courts find amendment futile when, as here, the plain text of the governing statute forecloses the proposed theory. In *Deveraturda v. Globe Aviation Security Services*, 454 F.3d 1043, 1047-1048 (9th Cir. 2006), the Ninth Circuit affirmed denial of leave to amend because the statute's plain text unambiguously foreclosed the plaintiffs' theory and no set

of facts could save the claim: "'[w]here the statute's language is plain, the sole function of the courts is to enforce it according to its terms.'"  Courts also find amendment futile where settled precedent controls and no new facts could alter the outcome. *Daisey Trust v. Federal Housing Finance Agency*, 163 F.4th 1208, 1217 (9th Cir. 2026). Both grounds apply here.

**B.     The Amendment Is Futile Because the Government's Allegations Fail to State a Cognizable Legal Theory Under § 981.**

The absence of a cognizable legal theory alone renders amendment futile as a matter of law. *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). For the reasons set forth below, the Government's obstruction-by-suicide theory is not cognizable under § 981.

**1.     Section 981's "Obtained From" Language Does Not Reach Property Already Held**

Section 981(a)(1)(C) authorizes forfeiture of property "constituting or derived from proceeds traceable to" specified unlawful activity. Section 981(a)(2)(A) defines proceeds as property "obtained directly or indirectly, as the result of the commission of the offense." "Obtained" means to come into possession of something one did not previously have. The Ninth Circuit applied this definition in the forfeiture context in *United States v. Prasad*, 18 F.4th 313, 319 (9th Cir. 2021), a case involving statutory language materially identical to § 981(a)(2)(A), holding: "The plain meaning of the term 'obtain' is 'to come into possession of' or to 'get or acquire,'" citing Oxford English Dictionary (2d ed.

5

1989). Because the term can be interpreted according to its plain meaning, that reading controls. The Ninth Circuit applied the same principle in *United States v. Elias*, 154 F.4th 56, 73 (9th Cir. 2025), rejecting a government theory that forfeiture could be premised on a defendant's intention or expectation to obtain property rather than actual acquisition: "There is a commonsense distinction between intending or expecting to obtain something, on the one hand, and actually obtaining it on the other. The law of forfeiture recognizes that distinction by making the defendant's 'ill-gotten gains' the typical measure of forfeiture. [ ] That is not the same as the defendant's intended or expected gains." (citations omitted).

The requisite nexus between property and offense thus runs only forward from the offense; the government cannot establish that property already in hand was "obtained as the result of" a later crime. *United States v. Capoccia*, 503 F.3d 103, 118 (2d Cir. 2007). A district court applied the same principle to real property in *United States v. Real Property Identified as Parcel 03179-005R*, 287 F. Supp. 2d 45, 64 n.19 (D.D.C. 2003): an aircraft purchased before the defendant's fraudulent scheme "was clearly paid for prior to the commencement of [defendant's] fraudulent activities" and "not initially acquired as a result of such activity" and therefore could not constitute proceeds of the later offense. [2]

---

[2] Courts have recognized one qualification: where criminal proceeds are subsequently poured into pre-existing property through renovations, mortgage payments, or improvements, that tainted increment may be forfeitable. *United States v. Real Property and Premises*, 657 F. Supp. 2d 1060, 1072 (D. Minn. 2009)

To the extent that there is any ambiguity, which there is not, it <u>must</u> be resolved in the Trust's favor. CAFRA was enacted to protect innocent property owners from government overreach (*see* discussion, ECF No. 59 at 12-14), and more importantly, "forfeiture statutes are strictly construed against the government." *United States v. $493,850.00*, 518 F.3d 1159, 1169 (9th Cir. 2008); *see also United States v. Ritchie*, 342 F.3d 903, 910 (9th Cir. 2003). Indeed, where Congress used expansive forfeiture language in other provisions – "involved in," "used to facilitate," "used or intended to be used" to commit other crime (*e.g.* 18 USC §§ 981(a)(1)(A), (B), (G)(iii), 21 USC §§ 881(a)(1)(4) & (6)) – and chose narrower "proceeds" language for SUA-based forfeitures, construing "obtained from" to reach previously acquired property is not a permissible interpretation. [3]

The Government's own proposed complaint illustrates the point: it alleges that a vehicle was transferred to a co-conspirator as compensation for smuggling fentanyl into the facility. Prop. Compl. ¶ 227. That vehicle, value actually flowing

---

(home subject to partial civil forfeiture under § 981(a)(1)(C) only to extent criminal proceeds were later used for renovations and taxes). That qualification has no application here. The Government does not allege nor could it that any criminal proceeds from an alleged obstruction were deposited into or applied to the Defendant Properties. Miske/the Trust simply continued to hold property he/it already owned.

[3] The Government at least tacitly concedes that its proposed theory presents a "matter[] of first impression" involving "novel" facts and "novel" interpretations. ECF No. 61 at 2. A novel theory survives a futility challenge only when it is grounded in the statute's plain text, consistent with its structure and purpose, and supported by analogous authority pointing in the same direction.

to a participant as a direct result of the alleged obstructive act, is what "obtained from" an obstruction offense means. Decades of previously accumulated assets with no causal connection to the alleged 2024 scheme are not.

Here, the Government also takes conspicuously contradictory positions: it alleges Miske was "the de facto owner and person in control of all of the Miske Companies" and that he "purchased" the Defendant Properties over a decade before September 2024, Prop. Compl. ¶¶ 216(e), 223, while simultaneously arguing it is "not clear the Defendant Properties were Trust property prior to September 2024" because they were specifically not listed on Schedule A. [4] ECF No. 61 at 4-5. These positions cannot coexist, and either way the 2024 amendment did not cause the Trust to "obtain" any property – the Trust was assigned all of

---

[4] The Government's suggestion that the absence of specific assets in Schedule A means they were not Trust property misunderstands standard revocable trust practice. Schedule A is an administrative convenience, not a legal prerequisite for trust funding. A general assignment clause transfers all of the settlor's property to the trust by operation of law, without requiring individual asset enumeration. Hawaii law recognizes that property may be transferred to a trust by assignment (HRS §§ 554D-401, 554G-2), and does not require itemization of assets in the trust instrument; however, whether a general assignment effectively transfers a particular asset depends on compliance with applicable property-transfer formalities. (*See also,* Restatement (Third) of Property: Wills and Other Donative Transfers § 6.1 cmt. b; Loring and Rounds: A Trustee's Handbook § 2.1.1 (2024); Properties' status in or outside of trust, or in nominee owner's name, does not impact forfeitability because the true legal owner is the person. *United States v. Gilbert,* 244 F.3d 888, 899–900, 914 (11th Cir. 2001); *Amonette v. Indymac Bank, F.S.B.*, 515 F. Supp. 2d 1176, 1184 (D. Haw. 2007).

Miske's property by 2016, if not earlier. [5]

The Government's bold unsupported claim that Miske's supposed transfer of his property into Trust "meant the Trust obtained new property rights" (ECF 61 at 10) is thus wrong on the record and the law.

> **2.    An Assignment To A Trust Did Not Shield Miske's Assets From Potential Criminal Forfeiture, So Did Not Transform Pre-Existing Property to Obstruction Proceeds**

The Government's attempts to create a factual dispute over testamentary interpretation and the Magistrate's presumable, unstated conclusion that the issue must await discovery fail. Property held in a defendant's revocable trust remains the defendant settlor's own and would be subject to a criminal forfeiture regardless of if or when any specific assets were listed in the Trust instrument.

Claimant vehemently refutes the Government's factual allegations that Miske intentionally ended his life to prevent criminal forfeiture of the Defendant

---

[5] Again, while not relevant to this brief, the Government's positions regarding N.M.'s innocent owner status are similarly inconsistent. In its proposed amended complaint, the Government alleges that Miske's September 2024 trust amendment which removed other beneficiaries and installed N.M. as sole beneficiary was itself part of the obstructive conduct. ECF No. 56-1 ¶ 223. Yet in its Reply, the Government argues N.M.'s interest arose only upon Miske's death on December 1, 2024, *after* the conduct giving rise to forfeiture, thereby defeating the innocent owner defense under 18 U.S.C. § 983(d)(3). ECF No. 61 at 10. Accepting the Government's own allegation that N.M. became sole beneficiary in September 2024 before Miske's death by suicide, § 983(d)(2) would govern rather than § 983(d)(3). Under § 983(d)(2), N.M., who had no knowledge of and no ability to prevent or terminate Miske's conduct, would qualify as an innocent owner.

Properties [6], and that the September 2024 Trust Amendment was part of that

scheme [7] -- but even if presumed true *arguendo*, the Trust prevails here. The

Government's theory fails as a matter of law because even if Miske had attempted

to transfer (some of) the Defendant Properties into the Trust in September 2024 to

shield them from forfeiture (which the Trust documents themselves refute) such a

transfer would have accomplished nothing consequential as to the criminal

forfeiture, so had no bearing on whether the properties can be considered proceeds

of obstruction.

---

[6] Though not relevant to the legal analysis of this Objection, the Government was aware as far back as 2019 that, like his father who committed suicide while incarcerated, Miske had expressed suicidal ideations not rooted in any scheme to protect property interests, but rather in his unwillingness to serve time in prison. *See* 1:19-mj-01189-RT at 30 ¶ 92.

[7] Public records subject to judicial notice and on file here confirm that the Trust, established in 2008, was title owner of the two Defendant Real Properties since 2010 and 2011, respectively.  By April 2016 (after the death of his son) Miske transferred all of his property to the Trust and designated the Trust's current minor beneficiary as sole beneficiary of essentially all Trust property (save for some small cash distributions). Doc. 24-3 at 7 (indicating "all my right, title, and interest in and to all of my property that may legally be held in trust … including all of my real, personal, tangible, and intangible property, located in the United States, whether separate property or community property, and whether acquired before or after the execution of this agreement" belongs the Trust. (ECF No. 24-3 at 7); *id*. at 26. The September 2024 Amendment reflects the ordinary estate planning of a person facing lengthy incarceration who believed he had already lost his properties and was making contingent provisions in the event his appeal succeeded, not a scheme to shield assets. All relevant Trust documents are part of this Court's record and require no additional discovery to interpret. *See* ECF Nos. 24-1, 24-2, 24-3, 24-4.  Yet, even assuming the Government's characterization is correct, transferring property into a revocable trust would not have prevented their criminal forfeiture: such property remains the settlor's while he is alive, as discussed.

A revocable trust affords no protection against a settlor's creditors or the government's forfeiture claims. Because the settlor retains the power to revoke the trust and reclaim its assets at any time, the law treats those assets as the settlor's own. *Amonette v. Indymac Bank, F.S.B.*, 515 F. Supp. 2d 1176, 1184 (D. Haw. 2007) (settlor of revocable trust "retains an unlimited right to revoke any conveyance to the revocable living trust" and therefore "has an unfettered ownership interest even though title is legally held by the trust"); *see also* Restatement (Third) of Trusts § 25 cmt. e (property in revocable trust treated as settlor's own for purposes of creditor claims); 26 U.S.C. § 676 (IRS treats grantor as owner of property in revocable trust because grantor retains power to revoke). The Defendant Properties, assuming Miske's conviction was not overturned, would have been subject to criminal forfeiture while Miske was alive regardless of any trust amendment. The only event that prevented criminal forfeiture of Miske's interests in the Defendant properties was Miske's death, which triggered abatement by operation of law, not by any effect of a Trust or Trust Amendment, or lack thereof. [8] Even without a Trust, Miske's properties would have probated to his

---

[8] While putting property in trust may have had some consequence as to how Miske's property may have ultimately been distributed upon his death absent a forfeiture proceeding, whether Miske's properties were, or were not, held in his own revocable living Trust, or nominally owned by some shell company, had absolutely no significance or effect on the Government's criminal forfeiture proceeding. *See, e.g. United States v. Gilbert,* 244 F.3d 888, 899–900, 914 (11th Cir. 2001) (Defendant masking his ownership of criminal proceeds in nominee LLC ownership does not negate his ownership for purposes of criminal forfeiture).

heirs when he died – the Government's criminal forfeiture would still abated regardless.

Any assignment of Miske's properties into his Trust, whether it happened by 2016 or in 2024, is inconsequential vis-à-vis shielding the property from criminal forfeiture. The only act that had any bearing or consequence on the pending criminal forfeiture was Miske's death, not any transfer of title, or lack thereof, which the Government ultimately concedes. ECF 61 at 15. The Government's attempt to create a factual dispute as to when Miske's Defendant properties were assigned to the Trust is a classic red herring and does not somehow alter that Miske obtained all of the properties years before any alleged obstruction.

### 3. The Government's Cited Cases Rest on Inapplicable Statutory Standards and Starkly Different Facts

In support of its theory that previously obtained property may be subject to forfeiture as proceeds of subsequent criminal activity, the Government relies on cases inapposite in that they were decided under statutory standards materially broader than § 981's "obtained from" language and bear no resemblance to the situation here.

The Government's Reply relies primarily on *United States v. Miller*, 911 F.3d 229 (4th Cir. 2018), and *United States v. Totaro*, 345 F.3d 989 (8th Cir. 2003), for the proposition that pre-existing property can become subject to forfeitable proceeds after criminal activity occurs. That proposition is true in

12

appropriate contexts. But neither case was decided under § 981's "obtained from proceeds" standard, and neither supports the Government's theory here.

*Miller* involved forfeiture under the "involved in" standard of 18 U.S.C. § 982(a)(1), which applies to money laundering offenses. The properties became forfeitable because criminal proceeds were actively funneled into them through mortgage payments, taxes, and improvements, making the properties "involved in" the laundering transactions. The statutory language is deliberately broader than § 981's "obtained from" standard. Congress used "involved in" when it wanted to reach property that became entangled with criminal activity; it used "obtained from" when it wanted to reach only property that was acquired through criminal activity. *Miller* does not bridge that gap.

*Totaro* involved forfeiture under RICO's "acquired or maintained" standard, 18 U.S.C. § 1963(a)(1), not § 981. The property was forfeitable because RICO proceeds were channeled through the defendant's wife's account and used to pay the mortgage, taxes, and upkeep on the estate -- without which she could not have retained it. The Eighth Circuit's "but for" analysis was grounded in the "maintained" prong of the RICO statute, which has no analog in § 981(a)(1)(C).

Most critically, in both *Miller* and *Totaro*, criminal proceeds were actively and continuously deployed into the property. Here, no criminal (obstruction) proceeds were deployed anywhere (no such proceeds were ever generated aside from an alleged non-Defendant vehicle). Miske simply continued to hold property

13

– regardless of whether it was held in Trust, personally, or via his companies – that he already owned while the Government pursued a criminal forfeiture of those properties (a criminal forfeiture that never became final).

The Government also relies on dicta in *United States v. Clark*, 165 F. Supp. 3d 1215, 1221 (S.D. Fla. 2016), for the proposition that obstruction can generate forfeitable proceeds where a defendant was said to "not have obtained, maintained or retained his access to or control over the properties" but for his obstruction. That reliance is misplaced and the case is not persuasive here.

First, the district court appears to have invented, or borrowed from another statute, the "maintained or retained" language, and *Clark* was a criminal forfeiture case decided under 18 U.S.C. § 982(a)(2).  Civil forfeiture statutes, like § 981 here which limits forfeiture to property "obtained" from specified unlawful activity, must be construed strictly against the government, and consistent with its purpose of protecting innocent property owners. Second, the *Clark* court concluded that the properties were properly subject to criminal forfeiture as "obtained, maintained or retained" with proceeds of bank fraud, so its perfunctory statement about proceeds of obstruction is superfluous dicta. *Id*. Third, the facts of *Clark* bear no resemblance here. The *Clark* defendant directed fraud proceeds to be transferred to concealed foreign accounts during the pendency of an SEC proceeding, to hide them from that proceeding, and then <u>used</u> the tainted proceeds to <u>generate more new value</u>. Specifically, Defendant hid millions of dollars from the SEC, and used

14

that money to maintain large balances in bank accounts (he paid expenses with the tainted proceeds) and "acquire [a] medical venture" which generated new income. *Clark* thus at best unpersuasively suggests that if criminally tainted proceeds are hidden from (SEC) process, and during that time used to generate new value, then the new value is forfeitable as proceeds of the original crime and might be also technically subject to criminal forfeiture as traceable to the obstruction of that (SEC) process.

Here, Miske hid nothing and transferred nothing. The Government knew of and restrained the properties by 2021, and thus Miske could not and did not use them to generate new value that the Government alleges constitutes proceeds of obstruction.

Similarly, the Government cites *United States v. Torres*, 703 F.3d 194, 200-202 (2d Cir. 2012) for the proposition that "proceeds of theft of government property under § 981(a)(2)(A) include[s] property retained[,]" suggesting that the Defendant properties here can be considered "indirect" proceeds. ECF No 61 at 8. Yet, in *Torres*, the Defendant's crimes were fraudulently obtaining reduced rent and underreporting her income for 8 years that created almost $50,000 (*Id*. at 205) of "net gain" (*Id*. at 196) and as a result she "had $11,724 available for her use" and was made to forfeit that amount as "save[d]" indirect proceeds (*Id*.). This is yet another example of unlawful activity generating something of value -- $11,724 that would have gone to rent/taxes; starkly different from the situation here where,

15

at best for the Government, Miske's death prevented a future potential loss of previously obtained property.

Finally, the Government relies on the civil forfeiture proceeding following Kenneth Lay's death in the Enron matter, *United States v. 2121 Kirby Drive, Unit 33, Houston, Texas et al.*, No. 4:06-cv-3335 (S.D. Tex. 2006), as support for the proposition that civil forfeiture can proceed after a defendant's death and abatement of conviction. We do not dispute that general proposition. But the facts of *Kirby Drive* are distinguishable and do not support the Government's theory. In that case, Lay's death was incidental -- a heart attack -- and the civil forfeiture recovered property traceable to proceeds of preexisting fraud offenses that had nothing to do with his dying. The predicate offense, the proceeds, and the forfeiture theory were all independent of the fact of death. The court permitted civil forfeiture to proceed on those preexisting facts after abatement voided the criminal conviction. It did not create a new theory that Lay's death was itself a crime generating additional proceeds.

The Government's original complaint in this action likewise rested on preexisting offenses – alleged criminal activity including racketeering – just as in *Kirby Drive*. The critical difference is that those preexisting claims face a statute of limitations problem: the Government did not file its civil forfeiture action until after Miske died; Claimant's position is that the applicable limitations period had run on those theories. The proposed amendment's obstruction theory is not a

16

substantively stronger theory; the Government itself concedes it is novel and unprecedented. Yet, if it prevails it successfully restarts the clock within the limitations period. *Kirby Drive* did not involve a statute of limitations problem, a novel predicate theory, or an attempt to treat the defendant's death itself as the proceeds-generating event. It provides no support for what the Government asks this Court to do here.

The Government is grasping at straws and reveals itself to be painfully detached from the reality of the situation. It argues that this civil forfeiture action is "is squarely in line with the fundamental purpose of forfeiture and does not violate CAFRA." ECF 61 at 6. Yet, its own quotation indicates that the purpose of civil forfeiture is "to ensure that crime does not pay: They at once punish wrongdoing, deter future illegality, and 'lessen the economic power' of criminal enterprises." Id. The Government thus appears to forget that Miske is dead. He is not punished via a successful civil forfeiture, his criminal enterprise is not punished by it, and stripping an innocent minor of property does nothing to deter future illegality. The only one harmed by a successful civil forfeiture is an innocent minor. The Government's detachment from the reality of this case is what lacks merit.

More importantly, the Government misses the wood for the trees in arguing that "CAFRA does not save the day." Id. Claimant's primary argument about CAFRA is not that since this civil forfeiture does not serve the spirit of forfeiture, the action must be dismissed or the amendment should not be allowed. Rather, the

17

law is "well-established" that CAFRA's <u>provisions</u> must be strictly construed against the Government. *See, e.g., $493,850.00*, supra, 518 F.3d at 1169. The Government here is asking this Court to construe the provisions of CAFRA, which carefully and specifically limit the reach of forfeiture to what is obtained from specified unlawful activity, so liberally in the Government's favor that "obtained" means intended to facilitate, or generally and tangentially related to or involved in, specified unlawful activity. It asks this Court to be the first to make this extra-textual, boundary-less, and government-friendly interpretation when binding case law says even ambiguities in text must resolve in favor of claimants. This Court must not ignore CAFRA's plain language in favor of some amorphic construction divorced the ordinary meaning of its plain terms.

### 4.    Suicide Cannot Constitute Obstruction

Though it is unnecessary for present purposes, it should be noted that there is no case anywhere in the federal courts holding that a defendant's suicide, however intentional, constitutes obstruction of justice under 18 U.S.C. § 1512 in the first instance. Section 1512 targets affirmative acts directed at the integrity of official proceedings, ie, tampering with witnesses, destroying evidence, making false statements. Death, even intentional death, is categorically different in kind. No explicit Congressional authorization exists to extend § 981 to reach property on this theory.

To the contrary, the only federal court to address the question held that

18

suicide cannot constitute obstruction of justice. In *United States v. Hanhardt*, 361 F.3d 382, 388-89 (7th Cir. 2004) (vacated on unrelated *Booker* sentencing grounds, *Altobello v. United States*, 543 U.S. 1097 (2005); obstruction holding unaffected), the Seventh Circuit reversed a sentencing enhancement for obstruction of justice, holding: "We do not believe that an attempted suicide can be considered an obstruction of justice." The court reasoned that the nature of suicide "does not lend itself to a clear understanding of an individual's motivation other than the obvious intent to end his life," and that a suicide attempt "transcends the desire to miss a court hearing." *Id.* Implicit in *Hanhardt* is the broader principle that suicide, whatever its motivation, is categorically distinct from the affirmative, proceeding-directed conduct that obstruction statutes target. Although *Hanhardt* arose in the sentencing guidelines context, its reasoning applies with equal force here: the Government's theory requires treating Miske's death as a deliberate legal maneuver under § 1512, a proposition no court has ever accepted. The amendment is futile on this basis alone.

## C.     The Remaining *Foman* Factors Do Not Independently Support Amendment

Although futility is the dispositive issue that requires reversal of the Magistrate's Order, Claimant does not concede the remaining *Foman* factors and preserves all objections to the Magistrate's conclusions on those factors for further proceedings. See ECF No 59 at 22-29. On undue prejudice specifically, the

19

Magistrate found none because the parties had not yet engaged in discovery or litigated the merits. But that analysis does not account for the character of the prejudice that flows from allowing a legally baseless amendment to proceed and prolong adjudication of this matter. Permitting amendment on a novel, unprecedented theory – one the Government itself concedes has never been tested – forces Claimant into years of delay, and then discovery and merits litigation on a claim that fails as a matter of law on the face of the existing record. That is precisely the prejudice the futility doctrine exists to prevent, and the Magistrate's failure to weigh it is an independent basis for reversal. On dilatory motive, the Government practically admits its new theory is simply to cure its statute of limitations problem and then opposes even a protective order limiting the scope of discovery to the claims in the First Amended Complaint, on the basis of wholly inadequate, perfunctory conclusion that civil discovery will harm the supposed criminal investigation into Miske's supposed suicide. The procedural facts speak for themselves.

## IV.   CONCLUSION

The Magistrate's Order is contrary to law. The Magistrate declined to conduct a futility analysis at all, deferring Claimant's futility arguments to "after discovery or on a dispositive motion", a deferral that reads futility out of the Foman framework entirely and is contrary to law under *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The district court should conduct that analysis now and

answer the purely legal question it presents: no court has ever applied § 981's

"obtained from proceeds" language to property already held on a proceeds of

obstruction-by-suicide theory. The statute's text does not support it, the

Government's cited cases are inapplicable here, and the Government's own

concession that this is a matter of first impression confirms the absence of any

analogous authority pointing in its direction.

Claimant respectfully requests that the district court sustain this objection,

reverse the Magistrate's Order, and deny the Government's Motion for Leave to

File a Second Amended Complaint.

Respectfully submitted,

Date: April 15, 2026

*s/ Edward M. Burch*
EDWARD M. BURCH
Law Office of Michael & Burch, LLP
One Sansome Street, Suite 3500
San Francisco, CA 94104
Telephone: (415) 946-8996
Email: edward@michaelburchlaw.com

Attorney for Claimant The Michael J.
Miske, Jr. Revocable Living Trust

21