IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REAL PROPERTY LOCATED AT 6 LUMAHAI STREET IN PORTLOCK, HAWAII, *et al.*,<br><br>Defendants. | Case No. 25-cv-00028-DKW-KJM<br><br>**ORDER (1) SUSTAINING IN PART AND OVERRULING IN PART CLAIMANT'S OBJECTIONS TO DECISION OF U.S. MAGISTRATE JUDGE, AND (2) GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTIONS FOR LEAVE TO AMEND AND TO STAY** |

Plaintiff United States of America seeks to amend the operative First Amended Civil Forfeiture Complaint (FAC) and to stay this action in its entirety. Specifically, the government wishes to add a claim of obstruction of justice as a basis for forfeiture, alleging that the targeted properties are "proceeds" of both fraudulent conduct occurring between 2000 to 2020 *and* separate conduct involving obstruction in 2024.

Upon review of the government's proposed Second Amended Complaint (SAC), the parties' briefing, applicable case law, and arguments presented at the April 24, 2026 hearing, the Court finds that the government's new allegations, *in part*, state a plausible claim for forfeiture – more precisely, the theory that, in committing certain acts in 2024, a revocable living trust in the name of Michael

Miske "obtained" property as a result of Miske's obstructive conduct.   That, however, is as far as plausibility goes.   In other words, to the extent it attempts to do so in the SAC, the government is not permitted to proceed on any theory that *Miske*, rather than his trust, obtained property in 2024 or that Miske and/or his trust *retained or maintained* property in 2024.   As for the motion to stay, under the circumstances presented, the Court finds no valid reason to stay the claims initially asserted in this case (*e.g.* those set forth in the FAC).   To that extent, the government's stay request is overbroad and denied.   Because the new, as-limited, SAC allegations, however, coincide with the government's criminal investigation involving the same, no discovery or other litigation is permitted concerning those new allegations without the consent of this Court.   To that extent, the government's stay request is granted.

## **RELEVANT BACKGROUND**

The United States initiated this forfeiture proceeding on January 22, 2025, with the filing of a Complaint against various properties referred to collectively herein as the "Defendant Properties".[1]   Dkt. No. 1.   The Defendant Properties include multiple pieces of real property, multiple automobiles, multiple paintings

---

[1]For ease of reference, the Court adopts and uses this term to define the properties for which forfeiture is sought.

and other works of art, and U.S. currency seized from multiple bank accounts. *Id*. at ¶¶ 3-29. Among other things, the United States alleged that all of the Defendant Properties constituted or were derived from the proceeds of unlawful activity, including various forms of fraud, committed by Michael Miske (Miske) between 2000 and 2020. *Id*. at ¶¶ 34, 158-203, 211-212. More specifically, the United States alleged that the unlawful activity involved Miske using false pretenses to run various revenue-producing businesses—revenue, or "proceeds", that were then used to "purchase or fund" the Defendant Properties. *Id*. at ¶¶ 77-159. The Complaint alleged that, as a result, all of the Defendant Properties were forfeitable. *Id*. at ¶ 229.

On April 1, 2025, the Michael J. Miske Revocable Living Trust (Miske Trust) filed a "verified" claim opposing forfeiture, claiming an interest in the Defendant Properties. Dkt. No. 24. Other claimants did the same. *See, e.g.*, Dkt. Nos. 18, 25, 27.

On May 7, 2025, the United States filed the FAC, Dkt. No. 36, containing, *inter alia*, functionally identical allegations to those described above. Specifically, the United States continued to assert that the Defendant Properties constituted or were derived from the proceeds of Miske's unlawful, *i.e.*, fraudulent, activity, and were forfeitable as a result. *Id*. at ¶¶ 34, 67-194, 203-204, 221.

3

After multiple continuances of the Federal Rule of Civil Procedure 16 scheduling conference, *see* Dkt. Nos. 43, 50, 54, the United States filed a motion to amend the FAC ("motion to amend") on March 9, 2026, Dkt. No. 56. Principally, the United States seeks leave to "add obstruction of justice as a basis for civil forfeiture of the Defendant Properties…." Dkt. No. 56 at 2. The United States alleges that, from at least September 15, 2024, Miske and others conspired to obstruct an official proceeding, *to wit*, a criminal forfeiture proceeding against Miske involving the Defendant Properties. Dkt. No. 56-1 at ¶ 221. In particular, the proposed SAC alleges that, after a jury found the Defendant Properties forfeitable as property Miske obtained from the proceeds of his unlawful activities, Miske, first, attempted to transfer the Defendant Properties to the Miske Trust, and, second, committed suicide while in federal custody prior to entry of an order of forfeiture with respect to the Defendant Properties. *Id*. at ¶¶ 222-228. The United States further alleges that, if the criminal forfeiture had continued, Miske's interests in the Defendant Properties would have transferred to the government, but, due to his death, the criminal proceeding terminated and Miske's interests, instead, transferred to the Miske Trust. *Id*. at ¶¶ 230-231. According to the United States, as a result, the Defendant Properties are "proceeds" of Miske's

obstructive conduct because the same "thwarted the government's effort to obtain title to the [Defendant Properties]…." *Id*. at ¶ 229.

The Miske Trust opposes the motion to amend. Dkt. No. 59. Principally, the Miske Trust argues that the United States' new claims of obstruction cannot provide the basis for forfeiture of the Defendant Properties because (1) forfeiture should be "strictly construed" against the government, (2) the relevant statute only permits forfeiture of property "obtained" as a result of unlawful activity, (3) the Defendant Properties were not obtained as a result of any obstruction conduct in 2024 or thereafter, (4) the criminal forfeiture proceeding is not an "official proceeding" for purposes of obstruction, and (5) the beneficiary of the Miske Trust is an "innocent owner" of the Defendant Properties. *Id*. at 7-18.

In reply, the United States responds that its proposed amendment is not futile. Dkt. No. 61. In particular, the United States argues that proceeds of unlawful activity "may be obtained or retained directly or indirectly[]", Miske and the Miske Trust could not have "obtained, maintained, or retained" the Defendant Properties "but for" the alleged obstruction, the Defendant Properties "otherwise would have been forfeited through the criminal proceeding," and "previously-acquired property can become subject to forfeiture after criminal activity occurs." *Id*. at 2-5.

On April 9, 2026, the assigned U.S. Magistrate Judge granted the motion to amend.  Dkt. No. 64.  The Magistrate Judge found, *inter alia*, that the "allegations in the proposed second amended complaint are sufficient to state a claim for purposes of deciding whether to grant leave to amend under Rule 15[]" and the Miske Trust's opposing arguments were "better addressed after discovery or on a dispositive motion."  *Id*.

On April 15, 2026, the Miske Trust appealed the Magistrate Judge's decision granting the motion to amend.  Dkt. No. 67.  The Miske Trust argues that the Magistrate Judge improperly "deferred" consideration of whether the proposed amendments were futile and repeats its arguments with respect to futility.  *Id*. at 3-9.  The Miske Trust also argues that Miske allegedly transferring property to the Miske Trust would not have prevented criminal forfeiture of the same, cases cited by the United States are inapplicable, and suicide does not constitute obstruction of justice.  *Id*. at 9-19.

In response to the above-described appeal, the United States argues that the Magistrate Judge did not defer analyzing futility and repeats its arguments as to why the proposed amendments are not futile.  Dkt. No. 74 at 4-7.  The United States also argues that the Miske Trust cites no authority "affirmatively

precluding" its obstruction theory of forfeiture and its allegations regarding

Miske's suicide form a valid basis for obstruction of justice.   *Id*. at 7-9.

In addition to moving to amend, the United States has also moved to stay

this entire case.   Dkt. No. 58.   Specifically, the United States argues that, "[i]f this

Court grants the [motion to amend], then the interests of justice and judicial

economy unequivocally favor staying this civil forfeiture proceeding because the

[SAC] directly implicates an ongoing criminal investigation [of Miske's death]."

*Id*. at 1.   The United States argues that, should this case proceed, it "poses the

potential for damage" to the ongoing criminal investigation into Miske's death.

*Id*. at 16.   The United States further argues that the ongoing criminal investigation

will "examine" the Miske Trust's relationship to Miske and its knowledge of the

alleged conspiracy to obstruct justice.   *Id*. at 15.

The Miske Trust opposes a stay of this action, arguing that the requested

stay is premised upon a proposed amendment that "should not be allowed," the

government has failed to show how this case will "adversely affect" the ongoing

criminal investigation, the stay request is "premature", the government seeks an

improper "indefinite stay[]", a "protective order" can address the government's

concerns, and any stay could affect the Miske Trust's "due process rights".   Dkt.

No. 60 at 4-16.

In reply, the United States argues that a stay is not dependent upon granting the motion to amend because the Miske Trust's interests in the Defendant Properties are "directly implicated in the criminal investigation."   Dkt. No. 63 at 2-3.   The United States further argues that it has identified "specific types of harm" that will result if a stay is not granted, a protective order will not protect the criminal investigation, an indefinite stay is not sought, and due process is not affected by a stay.   *Id*. at 3-13.

On April 24, 2026, the Court held a hearing on the motions to amend and stay, at which counsel for the United States and the Miske Trust appeared.   Dkt. No. 76.   After taking the motions under advisement, this Order now follows.

## **STANDARDS OF REVIEW**

Pursuant to Section 636(b)(1)(A) of Title 28 of the United States Code, with certain exceptions not applicable here, a district court may reconsider the decision of a Magistrate Judge on a pretrial matter when the decision is clearly erroneous or contrary to law.

Pursuant to Federal Rule of Civil Procedure 15, leave to amend should be given when "justice so requires."   Fed.R.Civ.P. 15(a)(2).   However, justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would

8

be futile, or (5) there has been repeated failure to cure a deficiency.  *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "The exertion of this power calls for the exercise of sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 255).

In determining whether to grant a motion to stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *Id.* at 1110 (citing *CMAX*, 300 F.2d at 268).  Those interests include: (A) "the possible damage which may result from the granting of a stay," (B) "the hardship or inequity which a party may suffer in being required to go forward," and (C) "the orderly course of justice measured in terms of the simplifying or complicating of

9

issues, proof, and questions of law which could be expected to result from a stay."

*Id*.

In addition, pursuant to 18 U.S.C. Section 981(g)(1), a court "shall" stay a civil forfeiture proceeding, such as this one, "if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case."

## DISCUSSION

As the foregoing background indicates, the parties raise a multitude of arguments they believe are relevant to the motions to amend and to stay.   The Court begins with the appeal of the Magistrate Judge's decision to grant the motion to amend.   Again, the United States moves to add obstruction of justice as a basis for forfeiture of the Defendant Properties under 18 U.S.C. Section 981(a)(1)(C). Because the Court finds that whether this is permissible turns on the text of Section 981(a)(1)(C), the Court starts there.

Section 981(a)(1)(C) provides that the United States may forfeit any property that "constitutes or is derived from proceeds traceable to…any offense constituting 'specified unlawful activity'".   "Specified unlawful activity" includes obstruction of justice or obstruction of an official proceeding.   18 U.S.C. § 981(a)(1)(C) (referencing 18 U.S.C. § 1956(c)(7), which further references 18

U.S.C. § 1961(1), which further references 18 U.S.C. §§ 1503 & 1512—the obstruction of justice statutes).   In turn, Section 981(a)(2)(A) defines "proceeds" as meaning "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto…."   Section 981, however, does not define the term "obtained".

The United States argues (and alleges in the SAC) that the Defendant Properties were "obtained" and/or "obtained, maintained, or retained" as a result of the alleged obstruction of justice because they "otherwise would have been forfeited through the criminal [forfeiture] proceeding" that ended with a jury verdict against Miske.   Dkt. No. 61 at 3.   The United States further asserts that the "purpose" of the alleged obstruction was to "obtain[] the Defendant Properties as assets of the Miske Trust…."   *Id*.   Meanwhile, the Miske Trust argues that "obtained" under Section 981(a)(2)(A) means to "come into possession" or "acquire" yet, here, the government inconsistently alleges that Miske acquired the Defendant Properties *prior to* his alleged obstructive conduct.   Dkt. No. 67 at 5-9.

As the U.S. Supreme Court has recently explained, "generally in statutory interpretation, it is the ordinary…meaning" of a term or phrase "that is the better one."   *Chevron USA Inc. v. Plaquemines Parish, La.*, 608 U.S. ___, 146 S.Ct. 1052, 1061 (2026) (quotation omitted).   The ordinary meaning of "obtained" is to

11

"to gain or attain possession…."   Webster's Third New International Dictionary 1559 (2002); *United States v. Prasad*, 18 F.4th 313, 319 (9th Cir. 2021) (citing the Oxford English Dictionary when defining "obtain" as meaning "to come into possession of" or to "get or acquire.").   Further, "[c]ontrol over property connotes possession of it."   *Prasad*, 18 F.4th at 319 (interpreting "obtain" as used in 18 U.S.C. Section 982(a)(6)(A)(ii)(I)).

Here, the SAC clearly alleges in detail that *Miske* gained or came into possession of the Defendant Properties, collectively, between 2000 and 2020. After all, this time period, and the allegedly unlawful activities in which Miske engaged during it, was and remains the basis for many of the United States' forfeiture claims in this case.

Clarity diminishes, however, with respect to the claims involving the obstruction of justice.   Notably, the SAC can be construed as relying on more than one theory for how the Defendant Properties were "obtained" as a result of the obstructive conduct.   First, there is the theory that the obstructive conduct resulted in *Miske* obtaining the Defendant Properties in 2024.   *See* Dkt. No. 56-1 at ¶ 232 ("Miske…could not have obtained…the Defendant Properties…but for Miske's obstruction….").   Second, there is the theory that the obstructive conduct resulted in the *Miske Trust* obtaining the Defendant Properties in 2024.   *Id*. ("…the Miske

Trust…could not have obtained…the Defendant Properties…but for Miske's

obstruction…."). And third, there is the theory that the obstructive conduct

resulted in Miske or the Miske Trust *retaining or maintaining* the Defendant

Properties in 2024. *Id*. ("Miske, the Miske Trust, and any beneficiaries of the

Miske Trust could not have…maintained[] or retained any of the Defendant

Properties…but for Miske's obstruction….").

Only <u>one</u> of these theories potentially passes muster -- specifically, the

theory that the *Miske Trust* obtained the Defendant Properties in 2024 as a result of

Miske's obstructive conduct. This is the only theory consistent with the statutory

language and the ordinary understanding of the term "obtained" in light of the

alleged facts of this case. In particular, the SAC alleges that, as part of his

obstructive conduct in 2024, Miske transferred the Defendant Properties into the

Miske Trust either by way of "changes" to the agreement for the Miske Trust

and/or by consequence of his suicide. Dkt. No. 56-1 at ¶¶ 231. In other words, in

2024, *as a result of* the obstructive conduct, the Miske Trust came into possession

or control of, *i.e.*, *obtained*, the Defendant Properties. The United States,

therefore, may proceed upon this specific theory.[2]

---

[2]The Court acknowledges that the Miske Trust disputes the government's allegation that the
Miske Trust obtained the Defendant Properties in 2024. *See* Dkt. No. 67 at 8-9 (asserting that
the Miske Trust "was assigned all of Miske's property by 2016, if not earlier."). Whether

The United States, however, may <u>not</u> proceed on the two other theories outlined above.   With respect to *Miske*, the government alleges that he gained possession of the Defendant Properties at least by 2020 and, in some instances, many years earlier.   He, therefore, could not gain possession again in, say, 2024, when the government asserts his obstructive conduct began, without losing possession or control of the Defendant Properties beforehand—something which is not alleged in the SAC (or in any prior version of the complaint).[3]   As for Miske or the Miske Trust "retaining or maintaining" the Defendant Properties, the Court disagrees with the government that the ordinary meaning of "obtain" stretches to reach retention or maintenance.   As the definitions above indicate, the ordinary meaning of "obtain" clearly does not reach that far.   Further, the case law cited by the government does not support its position.   For example, contrary to the government's assertion, *Torres* did not involve "property retained".   Instead, the case involved cash *obtained* indirectly as part of the defendant's scheme to defraud

accurate or not, however, no such information is alleged in the SAC.   The Court, therefore, does not consider the Miske Trust's counter allegations at this stage of the case.   *Cf. Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (explaining that a district court may not "look beyond the complaint to a plaintiff's moving papers" in determining whether dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6)).   The same is true of the argument that the beneficiary of the Miske Trust is an alleged "innocent owner" of the Defendant Properties.
[3]The SAC, in fact, suggests something different—that Miske's loss of possession or control would not have taken place until entry of an order for forfeiture at sentencing.   Dkt. No. 56-1 at ¶ 230.

14

the government.   *See United States v. Torres*, 703 F.3d 194, 197-199 (2d Cir.

2012) (explaining that the defendant's scheme involved using fraud to facilitate the

transfer of cash from one government entity to another for the defendant's

benefit).[4]   The Court also rejects the theory that "thwart[ing]" the government

from obtaining title to the Defendant Properties is relevant to whether the same

were *obtained* as a result of the alleged obstruction.   Among other things, the

allegation itself establishes that the Defendant Properties were not.

For its part, the Miske Trust raises a number of other arguments for why the

United States should not be permitted to proceed with the SAC.   Other than as set

forth above, the Court does not find these additional arguments persuasive.   First,

as mentioned at oral argument, the Court disagrees that suicide, in conjunction

with the government's other relevant allegations, can never constitute obstruction

of justice.   Under either 18 U.S.C. Section 1503 or Section 1512, the elements of

---

[4]*Miller* and *Totaro* are also entirely different.   *See United States v. Miller*, 911 F.3d 229, 231-235 (4th Cir. 2018) (involving the use of laundered funds to finance improvements and make mortgage and tax payments on property purchased before any charged offense began); *United States v. Totaro*, 345 F.3d 989, 996-998 (8th Cir. 2003) (involving forfeiture under 18 U.S.C. Section 1963(a), which permits forfeiture of property "acquired or *maintained*" in violation of the statute) (emphasis added).   Finally, while the district court in *Clark* used the phrase "obtained, maintained or retained", it is not clear why, given that the court found that all of the relevant property had been "acquire[d]" due to the defendant's bank-fraud scheme.   *United States v. Clark*, 165 F. Supp. 3d 1215, 1220-21 (S.D. Fla. 2016).   To the extent the court was attempting to expand the Section 981 statutory language, this Court, in light of the discussion above, declines to follow.

obstruction of justice are, essentially, acting corruptly to obstruct or impede an official proceeding or the administration of justice.   18 U.S.C. § 1503(a); *United States v. Rasheed*, 663 F.2d 843, 852 (9th Cir. 1981); 18 U.S.C. § 1512(c)(2); *United States v. Lonich*, 23 F.4th 881, 904-905 (9th Cir. 2022), *overruled on other grounds in United States v. Lucas*, 101 F.4th 1158, 1162 (9th Cir. 2024).   In light of the *totality* of the allegations in the SAC, the United States has satisfied these basic pleading requirements.[5]

Second, the Court disagrees that the criminal forfeiture proceeding was not an "official proceeding" for purposes of Section 1512.   The Miske Trust's argument, which appears to essentially ask this Court to *ignore* the existence of the proceeding, Dkt. No. 59 at 14-15, is misplaced.   Specifically, it is better placed in the context from which it arises: whether a criminal proceeding should be abated when a defendant, like Miske, dies.   That is not the context here.   Moreover, at the time of Miske's alleged obstructive conduct, the criminal forfeiture proceeding undoubtedly existed, irrespective of whether it was later abated.   Therefore, given that the Miske Trust does not challenge the basic proposition that criminal

---

[5]To the extent it is relevant to this issue, the Court, thus, does not accept, at least at this stage of proceedings, and with limited briefing on the matter, the Miske Trust's contention that the government's obstruction claims fail because transferring assets to a revocable living trust purportedly "affords no protection" against government forfeiture.   *See* Dkt. No. 67 at 9-12.

forfeiture fits within the definition of "official proceeding", 18 U.S.C.

§ 1515(a)(1)(A) (defining "official proceeding", for purposes of Section 1512, as

including "a proceeding before a judge or court of the United States"), the Court

rejects this argument as a basis for futility.

Third, the Miske Trust argues that, aside from futility, the motion to amend

should be denied due to other factors, such as prejudice and delay.   Dkt. No. 67 at

19-20; Dkt. No. 59 at 18-25.   The Court disagrees.   As for *undue* prejudice, the

Court simply disagrees that any exists here beyond that which occurs in any, and

particularly forfeiture, litigation.   The Court further disagrees, in light of the

allegations of the SAC surrounding the government's investigation, that the

government delayed in bringing its new claims or otherwise had the basis for the

same "in early 2025".   There is also no ground on this record to accuse the

government of "bad faith".

In light of the foregoing, the United States may proceed with its claims of

obstruction of justice only on the theory that the Miske Trust obtained the

Defendant Properties as a result of the alleged obstruction in 2024.   As a result,

the Miske Trust's objections, Dkt. No. 67, to the Magistrate Judge's April 9, 2026

decision are SUSTAINED IN PART and OVERRULED IN PART, and the United

17

States' motion to amend, Dkt. No. 56, is GRANTED IN PART and DENIED IN PART, to the extent set forth herein.

This leaves the motion to stay.  For the reasons set forth below, the Court finds that a limited stay is warranted under the circumstances presented here.  As the background set forth above reveals, this case began with one set of claims related to Miske's alleged conduct and property obtained between 2000 and 2020, which the Court will refer to herein collectively as the "initial claims".  Although aspects of litigation related to those initial claims, such as discovery, have largely been "continued", or, in a fashion, stayed, since near the inception of this case, that was <u>not</u> due to anything related to the government's new obstruction claims or the investigation of the same.  Instead, it was due to the parties' attempts to settle the initial claims.  *See* Dkt. No. 53 at ¶¶ 6-7.

The United States now seeks to pursue a new claim or claims against the Defendant Properties related to Miske's alleged obstructive conduct in 2024, which the Court will refer to herein as the "new claims".  From this Court's perspective, having reviewed the record of this case, the new claims are separate and distinct from the initial claims and offer a dividing line.  Litigation, including discovery, is permitted to proceed on the initial claims, as has been the case since this action was filed.  Because litigation, including discovery, on the new claims appears to

18

substantially overlap and likely interfere with the government's ongoing criminal investigation into Miske's obstructive conduct, such litigation, with the exception of settlement efforts is stayed.[6]   The government is directed to provide written, quarterly updates on the status of its criminal investigation, calendared from the entry date of this Order.   Status updates may be filed under seal, as appropriate. Any party or claimant may seek relief from this stay at any time.

## CONCLUSION

The Miske Trust's objections, Dkt. No. 67, to the Magistrate Judge's April 9, 2026 decision are SUSTAINED IN PART and OVERRULED IN PART, and the United States' motion to amend and to stay, Dkt. Nos. 56, 58, are GRANTED IN PART and DENIED IN PART, all to the extent described above.

IT IS SO ORDERED.

Dated: May 26, 2026 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge

---

United States of America v. Real Property Located at 6 Lumahai Street in Portlock, Hawaii, *et al*; Civil No. 25-00028 DKW-KJM; **ORDER (1) SUSTAINING IN PART AND OVERRULING IN PART CLAIMANT'S OBJECTIONS TO DECISION OF U.S. MAGISTRATE JUDGE, AND (2) GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTIONS FOR LEAVE TO AMEND AND TO STAY**

---

[6]To the extent the parties need assistance in ascertaining the location of this dividing line, assistance from the Magistrate Judge may be appropriate.